Our next case on the call of the docket, today still January 16, 2013, is agenda number 17, case number 114-122, People v. Blair. Counsel for the appellant, please proceed. I don't know if I said 17 or 7, but I meant 7. Good morning, your honors. Counsel, may it please the court, Assistant Attorney General Garson Fisher for the People. Your honors, when a statute is struck down under the identical elements test, it is a unique situation, in that the statute viewed in isolation is perfectly constitutional. It's only when that statute is compared to another that the identical elements problem emerges. Therefore, by its very nature, an identical elements problem can be cured in either one of two ways. Either you can amend the statute in question, or you can amend the statute that it's being compared with. And this court has been clear in its continued application of the identical elements test that it makes no judgment about which of those two rational penalties the General Assembly has to choose. In this case, the General Assembly chose to penalize the criminal conduct in question under the firearm enhancements of the armed robbery statute. And the only way to give effect to that legislative determination was to amend the armed violence statute. So that's what the General Assembly did, and we know from this court's decision in Clemens that armed robbery with a firearm is now a constitutional statute. It no longer violates the proportionate penalties clause. An offendant asked this. Any import to the meaning behind the words void ab initio, as if it never existed? Yes, Your Honor. First, while it is true that in Guevara this court held that a statute that violates the proportionate penalties clause is void ab initio, to the extent that that applies to statutes found unconstitutional under the identical elements test, the court used imprecise language in that case because a statute that violates the proportionate penalties clause under the identical elements test is not necessarily invalid from the moment of its enactment. And void ab initio, both on its face and as applied in this court's precedent, means a statute is null from its inception, invalid from the moment of its enactment. It's easy to conceive of a situation where the General Assembly passes a valid constitutional criminal statute. There are convictions under that statute. There are sentences handed down. And the General Assembly then subsequently creates a new crime with identical elements and a lesser penalty. At that point, the first crime would be unconstitutional under the proportionate penalties clause. If the court conducted an identical elements analysis, it would find the first crime had identical elements and a greater penalty. But all of the convictions and sentences that predate the second crime wouldn't become invalid. In other words, the first crime is not invalid from the point of its enactment. It's invalid from the time of the second crime's enactment. And the first crime is not void ab initio. So you're really asking us to carve out really a new, narrowly tailored rule for proportionate penalties cases. Is that fair? Well, I think, Your Honor, first it's fair to say that our position is that a crime that is invalid under an identical elements test is not void ab initio. But I think it is also the case that the doctrine of void ab initio speaks to the enforceability of a statute and doesn't inform how the General Assembly can go about reviving an unconstitutional statute. Because void ab initio renders a statute void for purposes of the prosecutor, not for purposes of the legislator. The court has repeatedly recognized amendments to statutes that have been declared void ab initio. In fact, defendant argues that's the only way to revive such a statute. If the statute was void for purposes of legislative action when it's void ab initio, then there wouldn't be a statute there to be amended. The people argue that any time the General Assembly acts to cure a constitutional defect in a statute, it revives the unconstitutional statute. And that rule advances several important interests of this court. First, it gives effect to legislative intent. In this case, both from the fact that Public Act 95-688 cured the identical elements problem identified in House Child and from the statement of the bill's sponsors, we know that the purpose of that act was to revive the armed robbery firearm enhancement. Second, that rule would allow this court to give effect to an otherwise valid statute. As mentioned, we know from Clemens that armed robbery with a firearm is now a constitutional statute, and there's no valid reason for this court to deny enforcement of that valid statute at this point. And third, it's easy for the lower courts to apply consistently. We can tell from the sheer number of cases that have emerged on this issue that the lower courts looked at the criminal code as currently drafted, saw that armed robbery with a firearm is now a constitutional valid statute, there is no identical elements problem, and they naturally began enforcing and sentencing under those firearm enhancements. Defendants' proposed rule, which relies on the arbitrary distinction of whether the General Assembly amends the statute in question or the statute it's being compared with, thwarts legislative intent. It says to the General Assembly, we asked you to choose between these two options. You chose, but we're not going to give effect to that choice. It forces the court to deny enforcement of an otherwise valid statute, and it risks creating confusion and inconsistent application of the law because it says to the courts, you see the statute, you see that it is valid, but before you can enforce it, you need to comb through the legislative history to determine whether the legislative vehicle that was used to create this valid statute was the appropriate legislative vehicle. The defendant has identified a couple of cases that he says support his arbitrary rule, but the details that he focuses on in these cases are just coincidental to the outcome of those cases. They are not fundamental to the reasoning that the court relied on. First off, in Houschild, this court found that Public Act 91404 had revived the crime of armed violence predicated on robbery following the court's prior decisions, and it did so because it created the firearm enhancements in the armed robbery statute. It is true that coincidentally it amended armed violence, but if it had just been the amendments to the armed violence statute, it wouldn't have cured the identified constitutional defect. It wouldn't have revived the armed violence statute. It was only the amendments to the armed robbery statute that revived armed violence because those were the ones that eliminated the identified constitutional defect. And Manuel and subsequently Upton, again, the amendment in Manuel, it is true, did not amend the statute in question, and it was found not to revive that statute, but it also didn't cure the sentencing disparity between the two statutes. Now, that's a case that was being considered under cross-comparison, not identical elements, but it didn't cure the constitutional defect. That's why it didn't revive the statute in question, and that's revealed by Upton. The amendment that did eventually revive the statute actually increased the sentencing disparity, but it also amended a different section of the Controlled Substance Act to make it clear that that sentencing discrepancy was based on a legislative determination, and it was that statement of legislative purpose that revived the statute in question, not the amendment to the statute that actually increased the discrepancy that this court had found unconstitutional. Unless the court has any questions, people, for these reasons as well as those stated in our briefs, ask that this court reverse the decision of the third district and reinstate defendant's sentence. Thank you, Mr. Fisher. Counsel for the appellee. Good morning, Your Honors. Mr. Glick, Mr. Fisher. May it please the Court, I'm Santiago Durango. I'm an assistant appellate defender with the Office of the State Appellate Defender, and I represent the appellee in this case, Ms. Connie Blair. Your Honors, today I'm going to ask the Court to affirm the appellate court. The appellate court's decision was well-reasoned. It's based on cases that this court has previously decided, and it promotes sound policy. The court relied heavily, the appellate court relied heavily on this court's decision in People v. Manuel, in which this court found that a disproportionate act had to be acted upon itself in order to be revived. In fact, I could find no case where an act that had been found unconstitutional under the disproportionate penalties clause had been revived without acting on the statute itself. This is the first time where the legislature has attempted to revive a statute by simply acting on a comparison statute without acting on the unconstitutional higher penalty statute itself. That is contrary to this court's decisions. In Manuel, as I mentioned previously, this court found that it was not enough to act on the comparison statute. Later, the statute at issue in Manuel was Section 404 of the Controlled Substances Act, which had a disproportionate penalty to Sections 401 and 402 of the Act. The legislature remedied that problem, that disparity, by acting on Section 404 itself, and including a preamble in the public act explaining that it intended for that section to have a penalty that was comparable to the penalty for the other two acts. So that is really how the legislature has acted, more or less, in correcting disproportionate penalties problems. They have acted on the statutes themselves. And that's what we are suggesting the rule that this court should apply in this case. It is a rule that will promote sound policy because it is a rule that promotes clarity. There will be no question as to whether a statute has been revived if the legislature reprints the statute with some indication that it intends to revive that statute. If the legislature had done that in this case, we would not be before the court arguing. The State argues that, for example, this statute was perhaps okay prior to the time that armed violence became a crime with identical elements and different penalties. Therefore, the statute, in fact, was not void ab initio. Did we use that term in Horschild in describing what happened there and the process of reviving the statute? Yes. Thank you for the question, Justice Carbine. To clarify, in this case both the disparity arose at the same time because a firearm sentencing enhancement and the revival of the armed violence statute occurred in the very same act. So it was void, the armed violence, pardon me, the firearm enhancement was void ab initio from that enactment because that's when the disproportionality occurred. The State has provided a hypothetical where a statute is valid for many years, say, and then is rendered unconstitutional because of a proportionality problem that arises from a later enacted statute. In that case, the void ab initio doctrine still applies. It just simply applies from when the proportionality problem arose. Anything, the period of time that the statute was valid prior to the proportionality problem remains valid. It's the void ab initio, the beginning of the unconstitutionality starts from when the proportionality arose, the proportionality problem. In this case, it arose immediately. So it's as if the firearm sentencing enhancement had never been enacted or passed under the Norton Rule. Mr. Durango, you would suspect, wouldn't you, if we agree with your position, that the legislature will act quickly to reenact Section 18-2B, don't you? Wouldn't you think that? Yes, Your Honor. I would think so. But you're just saying that until that time, right, the case is impacted and for order, is that your order in a definitive statement as to how reenactment takes place? Yes. Is that your position? Yes, Your Honor. It would promote clarity, as I said. We would not be here if the legislature had done what it did when it reenacted Section 404. Even with the perhaps unintended revival of the armed violence statute, it acted on that statute itself. And it would also eliminate the need for the courts to scour the legislative history to find out whether one statute's legislative debates have somehow revived a different statute. It would also eliminate arguments about whether they have been implicit revivals. And it's a bright-line rule. It's simple to follow. It would place a very small burden on the legislature. Does this court have, well, not the power, but I guess, can we give effect to the intent, the clear intent of the legislature in which we both sort of feel is going to happen in the future with actions the legislature would take? Can we give effect to their intent now? Not if the void of initial doctrine is to remain viable. It would undercut the doctrine, I believe, if the court were to give effect to the intent expressed by the legislature in this case. It would be contrary to these courts' prior decisions. And again, as a matter of policy, it would actually promote confusion, lack of clarity, a need to scour legislative debates to see if a statute has possibly been revived intentionally or unintentionally. The legislature makes mistakes. It may have made a mistake when it revived the armed violence statute to create the disproportionality problem here. One of the cases I cited in my brief was the Okasik case. And in that case, the legislature amended a statute, but it amended the wrong statute. So the legislature does make mistakes. It may unintentionally revive a statute under the situation that we are addressing in this case. If this court adopts the bright-line rule that the defendant is suggesting, such problems would be eliminated because it would be clear to everybody, the courts and the parties, that the legislature intended to revive the statute and restated, reprinted the statute, making it very clear that that is what the legislature intended. It's a simple rule, easy to follow, and it would eliminate confusion. For these reasons, Your Honor, I would ask that the appellate court's order be affirmed and that Blair's case be remanded to the trial court for resentencing under the previous armed robbery statute within the class X range that applied at that time. If the court has any further questions, I'll be happy to answer them. Thank you, Mr. Durango. Thank you, Your Honors. Your Honors, there's a dialogue between the court and the General Assembly that has taken place, that takes place in an identical element situation generally and whenever a statute is declared unconstitutional. And in this case, the General Assembly, excuse me, the court says to the General Assembly, you have to choose between these two rational options. In House Child, the court said you have to choose between armed robbery with a firearm and armed violence. And the General Assembly complied with that. It made that choice, and the defendant now says that this court should say to the General Assembly, well, that's still not good enough. Either the court would have to say to the General Assembly, you have to make the other choice and amend armed robbery, choose armed violence, which this court says it doesn't make those judgments in identical elements cases, or the court would have to say to the General Assembly, you made the choice we asked you to make. You chose armed violence, but that's still not enough. You also need to pass a wholly meaningless amendment to the armed robbery statute in order to give effect to your choice. So the dialogue that's been engaged in between the General Assembly and the court, and this court's precedent would be the defendant's proposed rule would conflict with that dialogue and that precedent. It is true that in this case, to address another of the defendant's points, that in this case the identical elements problem emerged at the moment of enactment of the firearm enhancement. But, of course, the court needs to adopt a rule that will be applicable in all identical elements cases. And the hypothetical that the state presents is certainly one that will arise at some point in identical elements precedent. Defendant's response is, well, that's okay in the state's hypothetical. The first statute is void ab initio from the time of the second statute's enactment. But both in the plain meaning of the term void ab initio and as used by this court in its precedent, that's not void ab initio. Void ab initio means null from the point of its inception, invalid from the time of its enactment. To turn quickly back to Manuel and Upton, defendant asserted that subsequently and before the court's decision in Upton, the General Assembly took action on section 404 that resolved the constitutional problem. It did take action on section 404. It took action on section 404 that actually exacerbated the identified constitutional problem. It also took action on section 100 of the Controlled Substances Act, and that resolved the constitutional problem and revived section 404. There's been some debate about which rule, the people's proposed rule, that any time the General Assembly acts to cure a constitutional defect, it revives the unconstitutional statute, or petitioner's rule promotes clarity. Under the people's rule, the lower court would have to look only to the statutes that are on the books, look at the statutes themselves to determine whether they are valid statutes. If the statute doesn't violate the Proportion Penalties Clause, if there's no identical elements problem, then it can enforce this valid statute. It is under the defendant's proposed rule that the lower courts would have to scour legislative history in order to determine whether the proper vehicle was used to revive a statute. It is true in this case that Senator Cullerton's statements, for example, are further evidence that the General Assembly intended to revive armed robbery with a firearm. That makes this an especially easy case to identify the General Assembly's intent, but you need only look to the statute and see that the public act cured the constitutional defect to know that the General Assembly intended to revive the statute. So under the people's proposed rule, the lower courts would simply have to apply the statutes that are on the books and that don't have a constitutional problem on their face as currently written. Again, unless the court has any further questions, the people ask that this court reverse the decision of the Third District and reinstate defendant's sentence. Thank you, Mr. Fisher and Mr. Durango. The court thanks you for your arguments today. Case number 114122, People v. Blair, is taken under advisement as agenda number seven.